# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM SMITH,** | : | |
|     **Petitioner** | : | **CIVIL ACTION NO. 1:05-1269** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **PENNSYLVANIA BOARD OF PROBATION & PAROLE, AGENT BERTOCKI, NORTH SHORE OFFICE SUPERVISOR, and DISTRICT OFFICE SUPERVISOR** | : | |
|     **Respondents** | : | |

## REPORT AND RECOMMENDATION

Before the court is the plaintiff's petition for writ of habeas corpus. (Doc. No. 1.) For the following reasons, the court recommends that the petition be denied.

## I.  Background

Following a plea of guilty to murder in the third degree in the Court of Common Pleas of Allegheny County, Pennsylvania, the petitioner was sentenced on April 20, 1995, to a term of imprisonment of eight to twenty years. His minimum sentence date was May 5, 2002, and his maximum sentence date was May 5, 2014. (Doc. Nos. 1 & 12; Exh. 1 to Doc. 12.) On December 2, 2003, the petitioner was granted parole. On February 17, 2004, he was released to a community corrections center for a minimum period of three months until his discharge into the community. (Doc. Nos. 1 & 12; Exh.

2 to Doc. 12.)

The petitioner allegedly complained to respondent Bertocki, his parole agent, that the center staff discriminated against him and prevented him from complying with the terms of his parole. (Doc. No. 1.) The petitioner requested a transfer. (Doc. No. 1.) Respondent Bertocki allegedly told the petitioner that "the only transfer [the petitioner] was going to get would be back to jail" and to follow the center's rules and comply with the conditions of his parole. (Doc. Nos. 1 & 12; Exh. 3 to Doc. 12.)

On May 14, 2004, the petitioner signed out of the center to attend a Narcotics Anonymous meeting. The center's security monitor conducted a site visit to verify the petitioner's attendance. The security monitor found the petitioner absent. The petitioner claimed that he was at the meeting, but arrived late because he missed a bus, and the center monitor apparently visited the site prior to his arrival. The petitioner provided the center with a verification slip of his attendance. (Doc. Nos. 1 & 12; Exh. 8 to Doc. 12.) Subsequently, the center's vice president notified respondent Board of Probation and Parole ("Board") that, because of the petitioner's failure to comply with the center's rules and regulations, he was ordering the petitioner's unsuccessful discharge from the center. (Doc. Nos. 1, 8, & 12; Exh. 3 to Doc. 12.) On May 20, 2004, respondent Board rearrested the petitioner and charged him with a technical parole violation. (Doc. Nos. 1 & 12; Exh. 4 to Doc. 12.)

2

On May 28, 2004, there was a preliminary hearing on the technical parole violation. The petitioner was represented by a public defender. Based on documentary evidence and testimony from respondent Board's agent, the hearing examiner found probable cause that the petitioner had violated parole. (Doc. Nos. 1 & 12; Exhs. 5 & 6 to Doc. 12.) On July 7, 2004, there was a parole revocation hearing. The petitioner was represented by a public defender. Based on documentary evidence and testimony by the center's vice president and security monitor, respondent Board, on August 19, 2004, recommitted the petitioner for nine months on the parole violation in addition to the sentence remaining on the original conviction.[1] (Doc. Nos. 1 & 12; Exhs. 7, 8, & 9 to Doc. 12.)

The petitioner contends that the community corrections center's staff "knowingly and intentionally with deliberate indifference" impeded his compliance with the terms of his parole, which led to the technical parole violation and which respondent Board failed to consider at the hearing, and that the center's vice president and security monitor testified falsely at the hearings to hide their impediments to his complying with the conditions of his

---

[1] As of the date of this report, the petitioner remains incarcerated. In correspondence with this court, the petitioner alleges that he was reparoled on December 2, 2005, and complains that he has not yet been released. The court notes that even if the petitioner were reparoled, his petition would not be moot because a reparoled prisoner remains "in custody" of the parole board until the end of his maximum sentence. See Jones v. Cunningham, 371 U.S. 236, 242 (1963); United States v. Washington, 341 F.2d 277, 280 (3d Cir. 1965), cert. denied sub nom. Degregory v. United States, 382 U.S. 850 (1965).

parole and to ensure his return to prison. (Doc. No. 1.)  According to the petitioner, the security monitor testified in violation of due process because he was not the same monitor who found him absent from the meeting and the petitioner was thereby prevented from confronting the proper security monitor. Respondent Bertocki was allegedly complicit in the false testimony because he was responsible for the security monitor's testifying. (Doc. No. 1.)  The petitioner testified at the revocation hearing that the vice president "<u>knew</u> he went to that meeting" and that the center "put road blocks up to stop him from getting employment and housing." (Doc. No. 12 respts' ex. 8 (emphasis in original).)

The petitioner also contends that his public defender "failed to call or investigate any of [the petitioner's] witnesses, and failed in his professional conduct, and rendered ineffectiveness of counsel in these proceedings. This attorney knowingly and intentionally failed to provide [the petitioner] with the representation of a learned attorney." (Doc. No. 1.)  Over the public defender's alleged "gross negligence," the petitioner allegedly objected to the evidence admitted at the revocation hearing, but the hearing chairman allegedly "refused to acknowledge" the petitioner's objections because the petitioner was represented by counsel. (Doc. No. 1.)  The petitioner further contends that the recommitment was excessive in consideration of the minor technical parole violation. (Doc. No. 1.)

On September 16, 2004, respondent Board received the petitioner's

administrative appeal. It denied the appeal on October 14, 2004, because the evidence was sufficient to justify the decision, the petitioner waived his hearsay claim to the security monitor's testimony by failing to object to it, and the recommitment term was within the presumptive range. The petitioner contends he never waived his objections. (Doc. No. 1; Exh. A to Doc 1).)

On November 4, 2004, Smith petitioned the Pennsylvania Commonwealth Court for "writ of mandamus extraordinary relief" based on the alleged flaws in the hearings and the administrative appeal. (Doc. Nos. 1; Exh. B to Doc.1; Doc. No. 12; Exh. 11 to Doc. 12.) The Commonwealth Court ordered that the petition for writ of mandamus be treated as a petition for review addressed to the court's original jurisdiction. (Doc. No. 12; Exhs. 11 & 12 to Doc. 12.) On December 17, 2004, in response to the respondents' preliminary objection of defective service, the court ordered the petitioner to serve the petition for review upon the respondents and the Pennsylvania attorney general in accordance with the Pennsylvania rules of appellate procedure, within fourteen days. (Doc. Nos. 1; Exh. B to Doc. 1; Doc. No. 12 Exhs. 11 & 13 to Doc 12.) Because of the petitioner's failure to comply with the order, the court dismissed the petition on January 10, 2005. (Doc. No. 1; Exh. H to Doc.1; Doc. No. 12; Exhs. 11 & 14 to Doc.12.) The petitioner contends that he complied with the order and "ha[s] signed verification that the parties in question or someone from their office signed for the mandamus petition and the date signed." (Doc. No. 1 & pet'r's exs. D & G.)

On February 5, 2005, the petitioner petitioned the Pennsylvania Supreme Court for allowance of appeal, repeating the allegations in his appeal and petition for writ of mandamus and further alleging that the Commonwealth Court was "in error" and "knowingly and intentionally with deliberate indifference" acted with a "wanton desire to deny the access to the court to any person who challenged the action of the parole board and any violation of their constitutional rights."  (Doc. Nos. 1 & 12 & respts' ex. 15.)  On May 24, 2005, the Supreme Court denied the petition.  (Doc. Nos. 1 & 12 & respts' ex. 16.)  The petitioner contends "the Supreme Court was in error." (Doc. No. 1.)

On June 23, 2005, the petitioner timely commenced this action by pro se petitioning this court for a writ of habeas corpus.  He contends that the respondents' alleged actions caused his parole to be revoked in violation of his right to due process under the law.  (Doc. No. 1.)  He also reiterates his allegations against the Commonwealth Court and his public defender.  He does not pray for any relief.  The court granted the petitioner's motion to proceed in forma pauperis and ordered the respondents to respond to the petition. (Doc. Nos. 2 & 4.)  Subsequent to an order granting an enlargement of time, the respondents responded to the petition on August 17, 2005. (Doc. Nos. 5, 7, 12, & 13.)

**II.     Discussion**

A district court is authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254 (2006).  A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement, including the revocation of parole, which effectively lengthens a prisoner's sentence.  Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); Alston v. Pennsylvania Bd. of Probation and Parole, No. Civ. 04-2218, slip op. at 2 (M.D. Pa. Feb. 1, 2006).

In addition, the district court may grant a petition only if the petitioner has exhausted all available state remedies as to each federal claim raised in the petition. 28 U.S.C. § 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  The principle of exhaustion, which is founded on comity, requires a petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process," including petitioning for discretionary appeal.[2]  O'Sullivan v. Boerckel, 526

---

[2]"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172

U.S. 838, 844-45 (1999); Slutzker, 393 F.3d at 380 (citing Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)). The petitioner bears the burden of establishing that all available state remedies have been exhausted. Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005).

The exhaustion requirement is excused if it would be futile because "there is an absence of available State corrective process," such as where an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i), (ii); Slutzker, 393 F.3d at 380 (citing Doctor, 96 F.3d at 681). However, if exhaustion is futile because the petitioner failed to satisfy a state procedural requirement, then the petitioner has procedurally defaulted and the exhaustion requirement is not excused.

---

F.3d 255, 261 (3d Cir. 1999). A petitioner need not cite "'book and verse'" of the United States Constitution, but he must do more than raise a "'somewhat similar state-law claim.'" Id. (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. O'Connor, 404 U.S. 270, 277-78 (1971). A petitioner may put a state court on notice of a federal claim by citing federal or state cases containing constitutional analyses, raising the claim "in terms so particular as to call to mind a specific right protected by the Constitution," or alleging a fact pattern common to constitutional litigation. Id. (citing Evans v. Court of Common Pleas, Delaware County, Pennsylvania, 959 F.2d 1227, 1332 (3d Cir. 1992) (quoting Daye v. Attorney General of New York, 696 F.2d 186 (2d Cir. 1982) (en banc))). It is arguable whether the petitioner's petitions to the Pennsylvania courts sufficed to fairly present them with a federal claim. The petitioner almost exclusively cites Pennsylvania cases discussing Pennsylvania law. Nonetheless, this court will liberally construe the petitioner's petitions, see Brow v. Farrelly, 994 F.2d 1027, 1036-37 (3d Cir. 1993) (pro se pleadings are to be construed liberally) (citing Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985)), and accept that the petitioner's use of the phrase "due process" (Doc. No. 1) served to call to mind a specific constitutional right.

8

Coleman, 501 U.S. at 729-30; Slutzker, 393 F.3d at 380-81. Procedural default, like exhaustion, is founded on comity and federalism. A federal court may not entertain a petition for habeas corpus where the petitioner has procedurally defaulted because the procedural default "rests on independent and adequate state procedural grounds." Coleman, 501 U.S. at 729-30, 750; Slutzker, 393 F.3d at 380-81.

Procedural default is excusable only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[3] Coleman, 501 U.S. at 749-50; Slutzker, 393 F.3d at 380-81. To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of "cause" include where interference by government officials made compliance impracticable or ineffective assistance of counsel. Id. But a claim of ineffective assistance of counsel must generally be presented to the state courts as an independent claim before it may be used to establish "cause" for procedural default. Id. at 488-89; Werts v. Vaughn,

---

[3]The miscarriage of justice exception is available only in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Because this case concerns parole and the petitioner does not argue his innocence–indeed, he pled guilty to the crime–the court will not address this exception.

9

228 F.3d 178, 192-93 (3d Cir. 2000).

In this case, Smith's petition for habeas corpus should be dismissed. The petitioner has not shown that he exhausted his remedies in state court, nor does it appear from the record that the petitioner's remedies were exhausted. The petitioner failed to comply with the Commonwealth Court's order, which caused it to dismiss the petition for review without addressing the merits. Consequently, the Commonwealth Court was not fairly presented with an opportunity to reach the merits of the petitioner's federal claim. Similarly, the Pennsylvania Supreme Court, in reacting to Smith's petition for review, was not fairly presented with an opportunity to address the petitioner's federal claims.

Finally, although exhaustion is now futile,[4] the petitioner has procedurally defaulted on his federal claim. The petitioner does not argue cause and prejudice, and nor do the facts of the case indicate that he can. There was no interference by government officials hindering the petitioner's ability to petition for review; rather, the petitioner hindered his own petition by not complying with the Commonwealth Court's order concerning service. To

---

[4]Pursuant to 42 PA. CONS. STAT. § 763(a), the Pennsylvania Commonwealth Court is vested with exclusive jurisdiction over "appeals from final orders of government agencies." PA. R. APP. P. 1512, adopted pursuant to 42 PA. CONS. STAT. § 5571, provides that a party has thirty days after entry of the order to petition for review. See Williams v. Pennsylvania Bd. of Probation & Parole, No. Civ. 05-132, slip op. at 2 (M.D. Pa. Nov. 17, 2005) (discussing Pennsylvania law and rules governing appeals and petitions). Thus, the petitioner's claim is time-barred.

the extent that the petitioner claims the Commonwealth Court denied him access to the courts and abused its power, there are no facts to support such a claim, merely the petitioner's bald allegations subsequent to the court's dismissal of his petition. This court will not presume, without evidence, that the Pennsylvania court acted improperly. The petitioner argues that his counsel was ineffective at the hearings, but he does not argue that his failure to comply with the court's order or the Commonwealth Court's alleged interference was the result of ineffective assistance of counsel. In fact, the petitioner proceeded <u>pro se</u> at the time he petitioned the Commonwealth Court, and, although ineffective assistance of counsel was an argument in that petition, it had no bearing on the dismissal of that petition. Thus, there is no "cause" for the petitioner's procedural default; it is unjustified and does not warrant excusing the exhaustion requirement of Smith's petition.

### III. Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT** the petition for writ of habeas corpus be **DENIED**.

S/ Malachy E. Mannion  
**MALACHY E. MANNION**  
**United States Magistrate Judge**

Date: March 30, 2006

O:\shared\REPORTS\2005 Reports\05-1269.01.wpd